## In re Anonymous No. 24 D.B. 93

Disciplinary Board Docket no. 24 D.B. 93.

McGIVERN, *Member,* August 3, 1994—Pursuant to Rule 208(d)(2)(iii), Pa.R.D.E., the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 22, 1993 the Supreme Court of Pennsylvania entered a rule to show cause why the respondent should not be suspended based on his conviction in the United States District Court for the [    ] District of Pennsylvania of the offense of embezzlement or misapplication by a bank officer in violation of 18 U.S.C. §656.

On March 17, 1993 the Supreme Court ordered the respondent's temporary suspension from the practice of law.

The respondent's counsel, [A], Esquire, entered his appearance before the Disciplinary Board on March 24, 1993.

Office of Disciplinary Counsel filed a petition for discipline under Rule 203(b)(1), Pa.R.D.E. on February 16, 1993. Respondent filed an answer to the petition for discipline on March 14, 1993.

The matter was referred to Hearing Committee [    ] on March 18, 1993. On June 8, 1993 it was reassigned to include newly appointed member [    ] who replaced outgoing Chairperson [    ].

A hearing was held before two members of committee [    ], Esquire, who chaired the hearing, and [    ], Esquire. [    ], Esquire, was unable to attend.

On January 7, 1994, the Hearing Committee filed its report, which recommended a two-year suspension retroactive to March 17, 1993.

The matter was adjudicated at the March 10, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, whose principal office is now located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207, Pa.R.D.E. with the power to investigate all matters involving alleged misconduct of an attorney admitted to practice law in Commonwealth of Pennsylvania and to

528

prosecute all disciplinary proceedings brought in accordance with the aforesaid rules.

(2) Respondent was born in 1929 and was admitted to practice law in the Commonwealth of Pennsylvania in 1955. He currently resides at [    ].

(3) In 1986, respondent acquired a controlling interest in [B] Bank of [    ] (now [B] Bank [    ]). (N.T. p. 22.)

(4) The bank throughout the period maintained a "four-star" rating from an independent bank rating service. (N.T. p. 26.)

(5) From 1986 until he left the bank in 1992, respondent performed a variety of legal services which were outside the scope of his duties as president of the bank. (N.T. p. 31.)

(6) Up until 1990, respondent waived all legal fees for this legal work. (N.T. p. 41.)

(7) In 1990, respondent took $15,000 as "advances" against legal fees. Respondent repaid those advances so as not to affect the bank's rating. (N.T. pp. 29-30.)

(8) In 1991, respondent took $9,601 in similar advances. These respondent reported as income. (N.T. pp. 36, 46.)

(9) During a bank examination, this practice came to light, along with other shortages, and respondent agreed to repay the bank $15,120. (N.T. pp. 35-36, 46.)

(10) On July 7, 1992 a federal grand jury returned a 12 count indictment in the United States District Court for the [    ] District of Pennsylvania at Criminal no. [    ], which charged the respondent with embezzlement

or misapplication of funds by a bank officer in violation of title 18, United States Code, §656. (Stip. no. 4.)

(11) On July 27, 1992 respondent entered a plea of not guilty. (Stip. no. 5.)

(12) On September 21, 1992, pursuant to a plea agreement with federal prosecutors, respondent withdrew his earlier plea and entered a new plea of guilty to Count 1 of the indictment. Counts 2 through 12 were dismissed. (Stip. no. 6.)

(13) Respondent appeared before United States District Judge [C] on December 4, 1992 for sentencing on the charge of embezzlement or misapplication of funds by a bank officer in violation of United States Code, §656. There were three parts to the sentence:

(a) a six-month sentence of community confinement in [D];

(b) three years of parole following release; and

(c) a fine of $25,000 and a special assessment of $50. (Stip. no. 7.)

(14) The offense to which respondent pled guilty carried a maximum prison sentence of 30 years, and a maximum fine of $1,000,000. (Pet. ex. 1.)

(15) On December 4, 1992 respondent paid the special assessment, and he paid the fine on January 28, 1993. (Stip. no. 8.) Respondent has served his time in community confinement. (N.T. p. 38.)

(16) Respondent has no prior disciplinary record.

## III. CONCLUSIONS OF LAW

The board finds that conviction of embezzlement or misapplication of funds by a bank officer in violation of United States Code, §656 constitutes conviction of

serious crime, and therefore warrants discipline under Rule 203(b)(1), Pa.R.D.E.

However, the board also finds significant mitigating circumstances which indicate a period of suspension is appropriate in this case.

## IV. DISCUSSION

This matter arises out of the respondent's ownership interest in the [B] Bank of [    ], now [B] Bank [    ]. After acquiring what was at that time a controlling interest in the second smallest bank in the Commonwealth, respondent undertook a vigorous expansion program. (N.T. pp. 22, 24.) This program expanded the bank from one branch to four and made it the sixth smallest bank in the state, while maintaining the bank's financial strength and ratings. (N.T. pp. 24-25, 26.)

Because of respondent's concern for these last considerations, especially ratings (the bank had kept a very prestigious four-star rating throughout its recent history), the respondent was very anxious to control costs. This concern led to respondent undertaking to represent the bank in some matters, in which it is undisputed he had experience. (N.T. pp. 31-32.) Because he did not want to harm the bank's rating, he did not charge it legal fees as such for the representations, which were outside the scope of his duties as president of the bank. (N.T. p. 41.)

Instead, he took "advances" for the amount of the legal fees until the bank's profits for the year were finally determinable in December. (N.T. p. 44.) At that time he assessed whether or not the bank's profitability could

afford the legal fees. In 1990, they could not, and he returned the money, which removed the advances for that year from the books. (N.T. pp. 29-30.) In 1991, however, he had $9,601 in fees which he determined the bank could afford, and therefore listed the fees on the bank's books as legal expenses and declared the amount as income to himself. (N.T. pp. 32, 36.)

When respondent entered negotiations to sell the bank, however, this arrangement was discovered by auditors hired by the buyer to assess the bank, and respondent claims that was the first time he was aware that his actions regarding these "advances" were illegal. He agreed to repay the money to the bank. (N.T. p. 46.)

The information discovered in the audit was turned over to federal authorities, who initiated their own investigation. The information thus gathered was placed before a federal grand jury, which returned a 12-count indictment against respondent. (Pet. ex. 1.)

Respondent at first pled not guilty to the indictment, but after plea negotiations, he withdrew that plea. (Stip. nos. 5, 6.) Instead, because of the possible sentence, with prison taking him away from his two retarded adult sons, he pled guilty to the first count only. (N.T. p. 38.) The remaining charges were dismissed. (Stip. no. 6.)

Respondent was sentenced to six months community confinement in a halfway house, which allowed him to continue to work in a family real estate firm and to visit his sons. (N.T. p. 38.) He also received a fine of $25,000 and a special assessment of $50, both of which were paid. (Stip. no. 8.)

Under Rule 214(e) and (f )(1), Pa.R.D.E., the board's only task is to determine the appropriate level of discipline, as a violation is conclusively proven. The proper inquiry, therefore, is whether the attorney's character, as shown by his conduct, makes him unfit to practice law from the standpoint of protecting the public and the courts. See *Office of Disciplinary Counsel v. Casety,* 511 Pa. 177, 181, 512 A.2d 607, 609 (1986). The seriousness of the crime is a factor to be weighed. Here, the crime may involve a sentence of up to 30 years of imprisonment, indicating a very serious crime.

However, there are a number of factors which mitigate the perceived seriousness of this violation. First, the board notes that the sentence actually received did not involve formal imprisonment at all, but rather a type of community confinement. (N.T. p. 38.) Secondly, all monies which the respondent had control of were returned to the bank, so any harm this method of taking legal fees involved was minimized. (N.T. pp. 45, 46.) The committee also found that respondent was not aware that the arrangement was in violation of banking laws. (Rep. finding no. 17.) This finding is supported by the record. (N.T. pp. 43, 35.)

The respondent also took responsibility for his actions by pleading guilty. (Stip. no. 6.) His other actions also indicate a person who honors his obligations. He requested that he be placed in a facility nearer to his retarded sons than one originally assigned, so that he could care for them during his daily release period. (N.T. p. 38.) He also went back to the branch where the shortages were discovered in order to make sure that no other shortages had occurred. (N.T. p. 49.)

The board may also take into account the lack of any prior discipline against this attorney, during his over 30 years of practice. *In re Anonymous No. 77 D.B. 83,* 32 D.&C.3d 507 (1984). He also presented two character witnesses, including the executive director of the [    ] County Bar Association, who each testified to his unblemished reputation prior to the conviction. (N.T. pp. 55-58.)

In sum, the board finds that while the respondent's conduct was illegal, there is nothing in the record suggesting that respondent intended to deceive his client, the bank, or its shareholders, or the public by his actions, and therefore no greater sanction than suspension is warranted.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent receive a one year suspension from the practice of law, retroactive to March 17, 1993.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Gilardi recused himself.

Mr. Paris did not participate in the adjudication.

## ORDER

And now, August 25, 1994, upon consideration of the report and recommendations of the Disciplinary Board dated August 3, 1994 it is hereby ordered that [respondent],

a/k/a [    ] Jr., be and he is suspended from the bar of this Commonwealth for a period of one year, retroactive to March 17, 1993, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Frank J. Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket no. 94 R1801, due to the unavailability of Mr. Justice Rolf Larsen, see no. 127 Judicial Administration Docket no. 1, filed October 28, 1993.